UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                               :

MASON TENDERS DISTRICT COUNCIL    :
OF GREATER NEW YORK, MASON          :
TENDERS DISTRICT COUNCIL              :
WELFARE FUND, PENSION FUND,        :
ANNUITY FUND, TRAINING FUND, and   :
JOHN J. VIRGA as FUNDS' DIRECTOR,   :
                               :

           *Plaintiffs*,            :

                               :
        *-against-*              :

                               :
FORTUNE INTERIORS DISMANTLING    :
CORP., PHOENIX INTERIORS, INC.,       :
SILVER SERVICES GROUP               :
CORPORATION and GREAT AMERICAN  :
INSURANCE COMPANY,                :

                               :
           *Defendants*.          :

                               :
                               :
                               :
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7- 23-15__

12 Civ. 4253 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Mason Tenders District Council of Greater New York (the "Union"), Mason

Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund and John J.

Virga, in his fiduciary capacity as the Funds' Director (the "Funds") (collectively, the

"Plaintiffs"), bring this suit under the Employee Retirement Income Security Act of 1974

("ERISA") and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against

Defendants Fortune Interiors Dismantling Corp., Phoenix Interiors, Inc., Silver Services Group

Corporation and Great American Insurance Company (collectively, "Defendants"), claiming that

Fortune and Phoenix owe Plaintiffs unpaid fringe benefit contributions required by collective

1

bargaining agreements.  Silver is said to be liable for these amounts too, as Fortune's alter-ego or as a single employer with Fortune. [1]  Plaintiffs move, and Defendants cross-move, for summary judgment on the question of Silver's liability for Fortune's debts.  For the following reasons, both motions for summary judgment are denied.

## BACKGROUND[2]

Plaintiffs are "jointly administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements and trust agreements." Pl. 56.1 Statement ¶ 1.  In 1993, William Palmadessa founded Fortune with his brother, who ceased involvement after a few years.  *Id.* ¶¶ 8-9.  From 1993 to 2011, Fortune did interior and exterior demolition.  *Id.* ¶ 11.  The majority of Fortune's work was interior demolition, and Fortune also operated a container service.  *Id.* ¶¶ 13-14.  Palmadessa served as Fortune's president, and his primary tasks included looking for work for the business, estimating project costs, and supervising employees.  *Id.* ¶ 15.  Fortune was based in Richfield, New Jersey. *Id.* ¶ 16.  Fortune rented its facility from a company named Page Realty for $5000 to $6000 per month, but Fortune and Page Realty never had a lease.  *Id.* ¶¶ 17-19.

---

[1] Plaintiffs voluntarily dismissed Great American Insurance Company on August 21, 2012. Dkt. 10.  Fortune and Phoenix do not contest liability but dispute the amount of contributions owed, Def. Mem. at 16, and have refused to sign a confession of judgment, Pl. 56.1 Statement ¶ 6.

[2] The facts here are taken from Plaintiffs' 56.1 Statement.  Defendants have not provided a counter-statement in accordance with Local Civil Rule 56.1 and so the facts in Plaintiffs' 56.1 Statement are deemed admitted.  *See Liles v. N.Y.C. Dep't of Educ.*, 516 F. Supp. 2d 297, 308 (S.D.N.Y. 2007).  Defendants have included in their brief numerous unsupported factual allegations, which the Court does not consider.  Defendants submitted a 56.1 Statement in support of their cross-motion, to which Plaintiffs have provided an appropriate counter-statement. Dkt. 37, 45.

A few years after founding Fortune, Palmadessa incorporated Phoenix Interiors, Inc., which performed the same demolition work and had the same staff as Fortune. *Id.* ¶¶ 21-22. On June 11, 2008, Phoenix merged into Fortune. *Id.* ¶ 23. Palmadessa acknowledged that Phoenix and Fortune were a single employer jointly and severally liable for any obligations and liabilities. *Id.* ¶ 27.

Fortune was a member of a multi-employer bargaining group, the Interior Demolition Contractors Association, beginning in the 1990s. Collective bargaining agreements entered into by the Association and the Union bound the Association's membership. *Id.* ¶¶ 24-25. The Association and the Union had three agreements in effect from July 1, 2004 through June 30, 2017. *Id.* ¶ 28. The Agreements require employers to contribute to the Funds "in an amount determined by an hourly rate multiplied by the number of hours worked by employees within the jurisdiction of the agreement," require employers to deduct dues checkoffs and PAC contributions and remit them to the Union, and provide that all books and records must be available for inspection and audit by the Funds to verify that employers are paying the necessary contributions. *Id.* ¶¶ 30-32.

In August 2011, Fortune ceased its contributions, even though it continued to perform demolition work. *Id.* ¶¶ 41-42. Palmadessa stated that Fortune experienced cash flow problems. *Id.* ¶ 43. By December 2011, Palmadessa believed he owed $500,000 to the Funds and the Union, and he offered to settle with them for $300,000 but the Funds and the Union rejected this offer. *Id.* ¶¶ 46-47. He paid other bills with the $300,000, and caused Fortune to transfer at least $339,423 to Page Realty because he thought the Union would otherwise take it. *Id.* ¶¶ 48-50. In December 2011, Local 79, a constituent local member of the Union, withdrew its laborers from

3

Fortune because of Fortune's delinquencies, at which point Fortune ceased performing demolition work. *Id.* ¶¶ 3 n.2, 57-58.

Beginning in the mid-1990s through 2011, Ciro D'Amato, who is married to Palmadessa's cousin, worked for Fortune as a low-ranking foreman. *Id.* ¶¶ 51-52. At the end of November 2011, Eugene Errico, Fortune's bookkeeper, helped D'Amato incorporate Silver Services as a for-profit domestic corporation based in New Jersey. *Id.* ¶¶ 45, 54-55. Errico discussed working as Silver's bookkeeper with D'Amato in December 2011. *Id.* ¶ 56. At that time, Silver began performing interior demolition work in New York and New Jersey. *Id.* ¶ 59. Bert Esposito, who had served as Fortune's dispatcher, worked as Silver's dispatcher. *Id.* ¶ 60. In addition to being the owner, D'Amato worked as a foreman. *Id.* ¶ 62. Several foremen, truck drivers, and laborers for Fortune began working for Silver. *Id.* ¶¶ 63-74.

For several months in 2012, Errico worked for no pay; later in the year, Silver began paying Errico the same salary he had earned at Fortune. *Id.* ¶ 76. Errico continued to perform bookkeeping tasks for Fortune from December 2011 through at least April 2013, although he was officially laid off from Fortune. *Id.* ¶ 77. He continued preparing and depositing Fortune's checks, and prepared and deposited Silver's checks from the same desk at Silver's office. *Id.* ¶ 79. Silver and Fortune both had bank accounts at Chase Manhattan Bank, and paid one another thousands of dollars. *Id.* ¶¶ 81-83. As of April 2013, Silver owed Fortune approximately $20,000. *Id.* ¶ 84. At one point, Errico deposited a $10,000 check to Fortune for a truck to Silver's bank account by handwriting Silver's name as an additional payee, which Errico later claimed was an error. *Id.* ¶ 85.

4

Beginning in December 2011, Palmadessa worked two to three days a week from a desk in Silver's office, where he also had a laptop and email address. *Id.* ¶¶ 87-88. Palmadessa performed estimating work for Silver. *Id.* ¶ 89. In one instance, Palmadessa prepared and distributed a flier for Silver that contained Fortune's phone number, fax number, and business address, and listed Palmadessa as Silver's contact person. *Id.* ¶¶ 90-94. The flier also stated that Silver had 75 years of experience, which was not true and was disingenuous. *Id.* ¶ 95. Palmadessa obtained approximately six jobs due to the flier. *Id.* ¶ 96. On a bid for demolition work, Palmadessa was listed as Silver's contact person, and D'Amato was not mentioned. *Id.* ¶ 97. Palmadessa was never paid by Silver. *Id.* ¶ 99. He considered himself an independent contractor, but was hoping to begin receiving payment at some point, and began billing Silver in April or May 2013. *Id.* ¶ 99-102. Silver also used the estimating services of Monir Ahmed, who previously worked for Fortune. *Id.* ¶ 103. Silver rented or borrowed all the equipment it needed during its first few months from Fortune, including crowbars, a van, a garage, Fortune's dumping license, trucks, and mini containers. *Id.* ¶¶ 104-09, 112. Fortune sold some equipment to Silver as well. *Id.* ¶¶ 113-18.

Three audits of Fortune and Phoenix in 2010, 2011, and 2012 showed that in total, Fortune owes $728,349.58 in fringe benefit contributions and $90,705.10 in dues checkoffs and PAC contributions for the period from December 27, 2006 to March 31, 2012. *Id.* ¶¶ 119-125. Errico was informed of these findings at the time of the audit. *Id.* ¶ 125. Fortune and Phoenix have conceded liability but have not responded to a proposed Affidavit of Confession of Judgment that Plaintiffs submitted on May 27, 2014. *Id.* ¶ 127.

## **DISCUSSION**

### I.   **Applicable Law**

A party is entitled to summary judgment when there is "no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,'" *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 192 (2d Cir. 2014) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The Court must construe the facts "in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Pandora Media, Inc. v. Am. Soc'y of Composers, Authors, & Publishers*, 785 F.3d 73, 77 (2d Cir. 2015) (citation and internal quotation marks omitted).  If "after adequate time for discovery and upon motion, [a party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The non-moving party may not prevail simply by means of "[c]onclusory allegations, conjecture, and speculation," *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citation and internal quotation marks omitted), and must present specific evidence in support of its contentions that there is a genuine dispute as to material facts, Fed. R. Civ. P. 56(e).

### II.   **Analysis**

Plaintiffs move for summary judgment on the grounds that the evidence shows that Silver and Fortune are either alter egos or single employers as a matter of law, and accordingly Silver is liable for Fortune's debt.  Defendants oppose this motion and cross-move for summary judgment that Silver is not liable for Fortune's delinquent payments.  The Court finds that genuine issues

6

of material fact remain, and it cannot be said as a matter of law, as Plaintiffs would have it, that "[a]ny differences between the companies are mere technical changes made to avoid Fortune's contractual and statutory obligations to the Plaintiffs." Pl. Mem. at 2.[3]

## A. Plaintiffs have not shown as a matter of law that Fortune and Silver are a single employer.

The single employer doctrine binds a non-signatory employer to a collective bargaining agreement if the two companies constitute a single employer and the employees of the companies constitute a single appropriate bargaining unit. *See Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation, Pension & Welfare Funds v. JJJ Concrete Corp.*, 2015 WL 790085, at *6 (E.D.N.Y. Feb. 24, 2015) (citing *Brown v. Sandimo Materials*, 250 F.3d 120, 128 n.2 (2d Cir. 2001)). The application of the doctrine depends on "'the interrelation of operations, common management, centralized control of labor relations, and common ownership.'" *Lihli Fashions Corp., Inc. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996) (quoting *Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965)). The Second Circuit also considers "the use of common office facilities and equipment and family connections between or among various enterprises." *Id.* Where there is an "absence of an arm's length relationship," two companies may be treated as a single employer. *Id.* (citation and internal quotation marks omitted).

Plaintiffs here have failed to show as a matter of law that no genuine issues of material fact exist with respect to whether Silver and Fortune are a single employer. There is evidence of shared equipment, employees, operations, offices, and management to argue that the two entities

---

[3] The Court rejects as meritless Defendants' argument regarding the preclusive effect of the National Labor Relations Board's dismissal of a prior claim brought by a different party against Fortune. Def. Mem. at 12-13. The Court notes, however, that after an investigation the NLRB dismissed portions of the claim which alleged that Fortune and Silver were alter egos. Palmadessa Aff. Ex. A.

should be treated as a single employer. But this evidence fails to demonstrate that Fortune and Silver had a less than arm's-length relationship as a matter of law. Fortune's occasional sales and rentals to Silver do not demonstrate the complete interrelation of operations. Fortune was a business winding down and running out of money, and logically sought to dispose of its equipment in a financially beneficial manner. Plaintiffs provide some evidence of Silver receiving items from Fortune free of charge—for example, its usage of a garage, its dumping license, and "a few hundred mini containers." 56.1 Statement ¶¶ 107, 108, 112. But the existence of this evidence does not mean that Plaintiffs are entitled to summary judgment. Instead it suggests that genuine issues of material fact remain.

Similarly, that several Fortune employees subsequently worked at Silver is not dispositive. The two companies perform similar services, and it is as reasonable as not to infer that those who had lost their jobs at Fortune simply sought new employment with former colleagues at Silver. Nor have Plaintiffs shown that the two companies shared centralized control of labor operations. Plaintiffs' suggestion that Esposito "decided who would be hired and assigned to each job" at both Silver and Fortune again merely suggests disputed issues and is not dispositive. The same is true of the evidence of common office facilities and the slight family connection between the two companies—while this evidence suggests that the companies may be a single employer, it is not so overwhelming that it precludes any possibility that the companies are not a single employer.

Plaintiffs have also failed to show sufficient evidence of common management. Ciro D'Amato was a low-ranking foreman at Fortune and served no management role there; now he is the sole member of management at Silver. Palmadessa, who served as Fortune's management, serves in a part-time role at Silver helping with estimation services and advertising. The fact of

8

Errico's service as bookkeeper to both companies is insufficient to show common management.

Plaintiffs have not presented conclusive evidence to determine as a matter of law that Silver and Fortune are a single employer.[4] Accordingly, there is a genuine issue of material fact regarding whether Fortune and Silver have a single employer relationship, which is for a jury to resolve.

## B. Plaintiffs have not shown as a matter of law that Silver is an alter ego of Fortune.

The alter ego doctrine makes a "non-signatory [] legally equivalent to the signatory and [] itself a party to the collective bargaining agreement." *Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010). "The purpose of the alter ego doctrine . . . is to prevent an employer from evading its obligations under a collective bargaining agreement through a sham transaction or technical change in operations." *Castaldi v. River Ave. Contracting Corp.*, 2015 WL 3929691, at *2-3 (S.D.N.Y. June 22, 2015) (citations and internal quotation marks omitted). Whether two companies are alter egos depends on "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Lihli Fashions Corp.* 80 F.3d at 748 (internal citations omitted).

Plaintiffs contend that Silver is Fortune's alter ego because the companies use the same employees, have the same management, use the same equipment, money, and customers, and have the same business purpose. Pl. Mem. at 12-16. The Court disagrees for many of the same reasons discussed above.

---

[4] The Court does not examine whether Fortune and Silver constitute an appropriate bargaining unit because Plaintiffs have not otherwise demonstrated that they are a single employer.

9

Plaintiffs have failed to show sufficient evidence to deem Fortune and Silver alter egos as a matter of law. Here is what connects the two companies: several employees went from Fortune to Silver, Silver used Fortune's phone number, fax number and address on one flier and Fortune used Silver's office to conduct bookkeeping, and some of the equipment used was the same. The two companies also share the same business purpose. While these connections are some evidence of an alter ego relationship, they are not dispositive.

That Fortune continued to lend money to Silver after Silver already owed Fortune a substantial amount does not necessarily demonstrate that the companies were interconnected. Nor does the fact that Errico once wrote Silver in as an additional payee on a check to Fortune, or that the memo lines of the checks between the two did not have accurate descriptions in the memo lines. Even if Palmadessa's transfer of money reflects anti-union animus, this is not sufficient to determine that Palmadessa simply transferred Fortune's operations to Silver. Indeed, this anti-union animus simply demonstrates that genuine disputes remain. And as discussed above, Plaintiffs have not demonstrated joint management of the two companies.

Plaintiffs are correct that there is some evidence of a mere technical change in ownership between these two companies. Again, this evidence is not conclusive that Silver is an alter ego of Fortune. *See, e.g., Trs. of Empire State*, 2015 WL 790085, at *8 (E.D.N.Y. Feb. 24, 2015) (denying summary judgment motion regarding single employer doctrine because "the evidence is not so one-sided as to preclude a reasonable factfinder from holding in favor of either party on this issue"). Accordingly, Plaintiffs are not entitled to summary judgment.

## C. Plaintiffs' Contractual Argument Fails.[5]

Plaintiffs also argue that the "unit accretion clause" in Fortune's collective bargaining agreement binds Silver. Pl. Mem. at 18-19. But this argument fails for the reasons explained above. Plaintiffs have failed to show that as a matter of law the two companies either "have substantially similar management, business purpose, operation, equipment, customers, supervision and/or ownership," or that there is an "interrelation of operations, common management, centralized control of labor relations and/or common ownership." *Id.* at 18. For the same reasons Plaintiffs' evidence is insufficient to show as a matter of law that the single employer and alter ego doctrines apply, Plaintiffs' evidence does not demonstrate as a matter of law that the unit accretion clause binds Silver to Fortune's collective bargaining agreement. Accordingly, this argument is rejected.

## D. Defendants' Motion for Summary Judgment

Defendants have not presented evidence entitling them to summary judgment that they are not liable for Fortune's debts to Plaintiffs. The evidence submitted by Defendants fails to demonstrate conclusively that Silver and Fortune are not alter egos or single employers. Based on the evidence presented by both sides, the Court cannot say as a matter of law that Silver and Fortune did not have an alter ego or single employer relationship, and accordingly denies Defendants' cross-motion for summary judgment.

---

[5] Plaintiffs also argue that Silver and Fortune meet the "substantial continuity test." Reply at 6. Because this argument was raised for the first time in Plaintiffs' Reply brief, and because "[i]t is improper in this district and this circuit to introduce new arguments in reply," *CE Int'l Resources Holdings LLC v. S.A. Minerals Ltd. P'ship*, 2012 WL 6178236, at *2 (S.D.N.Y. Dec. 10, 2012), the Court does not consider this argument. Plaintiffs have also failed to explain why this test should be applied instead of the more apt alter ego and single employer doctrines.

11

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied in its

entirety, and Defendants' cross-motion for summary judgment is denied in its entirety.

Questions remain regarding whether Silver may be held liable for Fortune's debts. The parties

are directed to confer and to submit a status report to the Court by August 17, 2015.

Dated: New York, New York                SO ORDERED
      July 23, 2015

                                    PAUL A. CROTTY
                                      United States District Judge